ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL VI

| G.L.V. RECURRENTE v. DEPARTAMENTO DE EDUCACIÓN RECURRIDO | TA2025RA00016 | REVISIÓN ADMINISTRATIVA procedente del Departamento de Educación Caso núm.: QEE-2425-21-03-01582 Sobre: Educación Especial |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de agosto de 2025.

Comparece el Sr. Guillermo López, como padre y en representación del menor G.L.V mediante el presente recurso de *Revisión Administrativa* y nos solicita que revoquemos la *Resolución Final* emitida por el Foro Administrativo de Educación Especial del Departamento de Educación de Puerto Rico (Foro Administrativo de Educación Especial) el 3 de julio de 2025. En el referido dictamen, el organismo administrativo declaró No Ha Lugar la *Querella* presentada.

Por los fundamentos que expondremos a continuación, confirmamos la resolución recurrida.

**I**

El 24 de marzo de 2025 el Sr. Guillermo López, en representación del menor G.L.V. (querellante; recurrente) presentó ante el Foro Administrativo de Educación Especial una *Querella* contra el Departamento de Educación de Puerto Rico (Departamento; DE).[1] En esta mencionó que el 22 de mayo de 2024 se celebró una reunión del Comité de Programación y Ubicación (en adelante, COMPU) con el propósito de discutir los objetivos del Programa Educativo Individualizado (PEI) del menor G.L.V. para el año escolar 2024-2025 y alegó que entre los acuerdos llegados respecto al PEI

---

[1] Apéndice del Recurso de *Revisión Administrativa*, págs. 1-4.

del menor G.L.V., se decidió cambiar la ubicación del estudiante de un modelo 1:1 (un maestro, un estudiante) a un modelo 2:1 (dos estudiantes, un maestro) por un periodo experimental de diez (10) semanas. Además, expresó que, en este periodo experimental sobre la ubicación del estudiante, se le estaría realizando evaluaciones periódicas sobre su funcionamiento y de no observarse progreso en esta ubicación, se discutiría el regreso del estudiante al modelo original 1:1. Alegó que acordaron que el estudiante recibiría terapias sobre el *Applied Behavior Analysis* (ABA), cinco (5) días a la semana, por ciento veinte (120) minutos diarios. Del mismo modo, expresó que acordaron que se mantendrían en comunicación con la Lcda. Natalia Rigual para realizar un estudio de caso donde las partes —Dra. Iris Pons y Lcda. Natalia Rigual— presentarían sus recomendaciones desde sus respectivas especialidades, ello para el óptimo funcionamiento del estudiante.

Al respecto, el recurrente arguyó que el Departamento violó estos acuerdos al no proveer las terapias ABA al menor G.L.V. durante la mayor parte del primer mes escolar y al no realizar el estudio de caso acordado por la Dra. Iris Pons y la Lcda. Natalia Rigual. Adujo que por motivo de estas violaciones presentó la Querella Núm. QEE-2425-22-08-00333 el 26 de agosto de 2024. Como parte del proceso de mediación celebrado el 6 de septiembre de 2024, alegó que logró acuerdos parciales con el Departamento, dejando constancia de que quedaban controversias pendientes para ser discutidas en una futura reunión del COMPU. Sin embargo, alegó que la reunión del COMPU no se llevó a cabo y el Foro Administrativo de Educación Especial archivó la Querella Núm. QEE-2425-22-08-00333 de manera prematura, alegando que los acuerdos alcanzados eran totales. Por tal razón, el 21 de octubre de 2024 radicó la Querella Núm. 2425-22-10-00844 para anular los acuerdos de la Querella Núm. QEE-2425-22-08-00333. A pesar de lo anterior, alegó que el Foro Administrativo se declaró sin jurisdicción por lo cual recurrió al Tribunal de Apelaciones de

Puerto Rico el 27 de diciembre de 2024 mediante el recurso KLRA202400710.

Asimismo, el recurrente alegó en su recurso que las violaciones del DE imposibilitaron la ejecución válida del acuerdo alcanzado en el COMPU de 22 de mayo de 2024, haciendo que el periodo experimental de ubicación del estudiante 2:1 quedara viciado desde su inicio. Arguyó además que, debido a que el DE violentó los acuerdos del COMPU de 22 de mayo de 2024, es decir durante las primeras diez (10) semanas del año académico, esto causó que el menor G.L.V. fuese privado del acceso efectivo de los servicios educativos acordados, que a su vez violentaron el debido proceso garantizado bajo el *Individuals with Disabilities Education Act* (IDEA). Por tal razón, solicitó al organismo administrativo lo siguiente:

> 1. Reconozca y declare las violaciones procesales detalladas, incluyendo la omisión de las evaluaciones periódicas del funcionamiento del estudiante.
>
> 2. Disponga la restitución inmediata del estudiante a su ubicación original 1:1.
>
> 3. La reposición completa del año escolar 2024-2025 bajo el acomodo educativo 1:1 (un maestro, estudiante), garantizando que el estudiante reciba el apoyo individualizado necesario para remediar el tiempo perdido.
>
> 4. Ordene al Departamento de Educación cumplir estrictamente con los acuerdos COMPU y las garantías procesales establecidas bajo IDEA.[2]

El 6 de abril de 2024 el querellante presentó una *Moción Informativa sobre Incumplimiento del Término para Contestar la Querella*,[3] donde alegó que habían transcurrido catorce (14) días calendario desde la radicación de la *Querella* y el DE no había presentado su contestación ni había solicitado prórroga. Por lo que solicitó al organismo administrativo que tomara como ciertas las alegaciones contenidas en la *Querella*.

En respuesta, el 7 de abril de 2025, el DE presentó su *Contestación a Querella*[4] en la cual adujo que el estudiante contaba con las alternativas de ubicación para atender sus necesidades educativas, servicios

---

[2] Apéndice del recurso, pág. 4.
[3] Apéndice del recurso, págs. 5-6.
[4] Apéndice del recurso, págs. 7-15.

relacionados y suplementarios, por lo que le correspondía al progenitor del menor demostrar —mediante prueba robusta— lo contrario. Planteó de manera afirmativa que las recomendaciones realizadas por un especialista o por un padre no son vinculantes, pues el COMPU es quien determina los servicios educativos, relacionados y suplementarios que recibirán los estudiantes, por lo que no estaban en la obligación a ofrecer un modelo educativo que no fuese avalado por el COMPU. De la misma forma, solicitó al organismo administrativo el cierre y archivo de la presente *Querella* y que se procediera a abrir la querella QEE 2425-22-08-00333 conforme a lo resuelto por el Tribunal de Apelaciones en el recurso KLRA202400710.

El 8 de abril de 2025, la parte querellante presentó una *Moción Explicativa sobre la Naturaleza Jurídica Distinta de la Querella QEE-245-21-03-01582 y Sobre Derecho a Solicitar Archivo Sin Perjuicio del Expediente QEE-2425-22-08-00333.*[5] En síntesis, la parte querellante alegó que la *Querella* actual posee una naturaleza jurídica distinta y autónoma respecto al expediente QEE-2425-22-08-00333. Esto es así, pues arguyó que la reclamación actual se enfoca en el carácter procesal de las violaciones realizadas por el DE en lo acordado en el COMPU, mientras que la reclamación contenida en el recurso QEE-2425-22-08-00333 era de carácter sustantivo, relacionado con el *Free Appropriate Public Education* (en adelante, FAPE) del estudiante, interrupción de terapias ABA y el desarrollo educativo inmediato del menor. Solicitó, entre otras cosas, que se ordenara la continuación del trámite de la presente *Querella* hasta su adjudicación y que se rechazara cualquier planteamiento de cosa juzgada por parte del DE debido a la existencia o el estado del recurso QEE-2425-22-08-00333.

Del mismo modo, y el mismo día que el escrito anterior, la parte querellante presentó una *Moción Solicitando Rebeldía Parcial del Departamento de Educación y Limitación de Defensas No Planteadas.*[6] En

---

[5] Apéndice del recurso, págs.16-20.
[6] Apéndice del recurso, págs. 19-20.

el aludido escrito, solicitó que se declarara en rebeldía parcial al Departamento porque su *Contestación a Querella* se realizó fuera de término sin explicaciones, evaluaciones, ni factores determinantes. Adujo que, al ser una negación general, sin fundamentos, incumplió con el derecho sustantivo a nivel reglamentario y federal.

El 11 de abril de 2025, el padre del querellante presentó un escrito al organismo administrativo en el cual solicitó ciertos acomodos para la vista a celebrarse.[7] En esencia, el querellante arguyó que padecía Trastorno por Déficit de Atención e Hiperactividad (TDAH) lo cual afectaba su capacidad para concentrarse, organizar ideas, procesar información compleja en tiempo real y a responder adecuadamente a preguntas bajo presión.  Adujo que al ser la vista un proceso técnico adversario, lo colocaba en desventaja frente al DE que contaba con representación legal y personal capacitado. Solicitó los siguientes acomodos:

1. Permiso para realizar el contrainterrogatorio de testigos en una fecha posterior, si así lo solicit[ó].
2. Permiso para grabar la audiencia.
3. Uso de tecnología de asistencia para lectura y comunicación.
4. Tiempo adicional para responder preguntas o intervenciones.
5. Permiso para presentar escritos o comentarios por escrito antes y después de la vista.[8]

De igual manera, requirió que garantizara una vista estructurada, en la que el alcance estuviese limitado a los mencionados en la *Querella*, la cual señala el incumplimiento de los acuerdos establecidos en la Minuta del COMPU del 22 de mayo de 2024. Solicitó que quedara por escrito que los asuntos a discutirse en la vista iban a ser los siguientes:

1. Incumplimiento con los acuerdos establecidos en la minuta del COMPU del 22 de mayo de 2024.
2. Omisión de las terapias ABA durante el inicio del año escolar 2024-2025.
3. Falta de ejecución del estudio de caso acordado entre la Dra. Iris Pons y la Lcda. Natalia Rigual.
4. Ausencia de evaluaciones periódicas del funcionamiento del estudiante durante el periodo experimental.

---

[7] Apéndice del recurso, págs. 23-25.
[8] Apéndice del recurso, págs. 23-24.

5. Cierre prematuro e indebido del caso QEE-2425-22-08-00333 por parte del Departamento.[9]

El 13 de abril de 2025, el Foro Administrativo de Educación Especial presentó una *Orden al Departamento de Educación sobre Incumplimiento en Término sobre Contestación a Querella*.[10] En el aludido escrito, el organismo administrativo ordenó al DE que demostrara las razones por las cuales no presentó la contestación a la *Querella*. El mismo día, el Foro Administrativo de Educación Especial presentó una *Notificación sobre Moción Solicitando Rebeldía del Departamento de Educación y Limitación de Defensas no Planteadas*.[11] Allí tomó conocimiento del contenido de la comparecencia del DE y señaló vista para el 25 de abril de 2025.

El 19 de abril de 2025 la parte querellante presentó una *Moción Respetuosa para Preservar el Récord y Objetar Previamente Cualquier Prueba Extemporánea del Departamento de Educación*.[12] Alegó que conforme el Artículo 9.3(b)(2) del *Reglamento del Procedimiento para la Resolución de Querellas Administrativas de Educación Especial y sobre la Otorgación de Honorarios de Abogado del Departamento de Educación de Puerto Rico,* Reglamento Núm. 9168 de 2020 (Reglamento Núm. 9168), toda la prueba a ser utilizada en la vista administrativa debía ser notificada a la parte contraria con no menos de cinco (5) días laborables de antelación a la fecha señalada. Arguyó que la vista señalada por el organismo administrativo estaba pautada para el 25 de abril de 2025. Adujo que sometió su evidencia oportunamente, pero que el Departamento no presentó evidencia ni solicitó prórroga alguna, ni ofreció explicación que justificara la omisión reglamentaria. El querellante alegó que el incumplimiento del Departamento con la presentación de la evidencia que pretendía presentar en la vista, socavaba directamente el propósito de los acomodos solicitados, pues lo colocaría en una posición de reacción

---

[9] Apéndice del recurso, pág. 24.
[10] Apéndice del recurso, págs. 26-27.
[11] Apéndice del recurso, pág. 30.
[12] Apéndice del recurso, págs. 35-36.

inmediata, sin preparación y en desventaja frente a una agencia administrativa que ya posee todos los recursos legales y técnicos.

El 22 de abril de 2025 la parte querellante presentó una *Moción de Urgencia para Exclusión de Evidencia Extemporánea por Incumplimiento y Solicitud de Sanción Procesal*.[13] En el referido escrito, solicitó que se excluyera de forma automática y total toda evidencia documental, testifical o pericial del DE. Esto es así, pues arguyó que el DE no había notificado evidencia alguna, documentos, listas de testigos, estudio, evaluación, ni objeción válida en el término reglamentario de cinco (5) días antes de la vista, la cual estaba programada para el 25 de abril de 2025.

El 21 de abril de 2025 el DE presentó su *Moción en Cumplimiento de Orden*.[14] En esencia, el DE aceptó que presentó su *Contestación a Querella* fuera del término reglamentario de diez (10) días por un error involuntario en el proceso de su presentación. Del mismo modo, alegó que no hubo necesidad de que el Juez emitiera una orden para contestar la *Querella*, pues tan pronto se percató de la misma, la contestación fue presentada. En respuesta, el 23 de abril de 2025 la parte querellante presentó una *Moción en Oposición a la "Moción en Cumplimiento de Orden" del Departamento de Educación*.[15]

Por su parte el 25 de abril de 2025 se celebró una vista en la cual compareció la parte querellante y el DE.[16] En la referida vista, el DE expresó que no había notificado prueba para la vista porque realizaría un planteamiento de derecho. En esencia, el DE expresó que la *Querella* ante la consideración del organismo administrativo era de la misma naturaleza que el recurso QEE 2425-22-08-00333 por lo que la reclamación actual era cosa juzgada. El Foro Administrativo de Educación Especial requirió al DE que expusiera su solicitud por escrito, porque la parte querellante solicitó replicar de manera escrita. Debido a lo anterior, se reseñaló el caso, por acuerdo entre las partes, para el 19 de mayo de 2025 a las 9:00 a.m.

---

[13] Apéndice del recurso, págs.33-34.
[14] Apéndice del recurso, págs. 37-40.
[15] Apéndice del recurso, págs. 41-42.
[16] Apéndice del recurso, págs. 48-49.

El 25 de abril de 2025 la parte querellante presentó una *Moción para Hacer Constar el Incumplimiento del Término de 30 Días para Celebración de Vista Administrativa y Preservación del Derecho a un Proceso Expedito.*[17] En el aludido escrito, adujo que, para el 25 de abril de 2025, antes de iniciar formalmente el procedimiento y la presentación de evidencia, el DE solicitó una prórroga adicional la cual fue concedida por el organismo administrativo para el 19 de mayo de 2025. Arguyó que conforme el Artículo 9.3(a)(iii) del Reglamento Núm. 9168, *supra*, el foro administrativo debía celebrar la vista administrativa dentro de los treinta (30) días calendario contados desde la radicación de la querella y al reprogramarla, estaba violentando el término reglamentario y la ley IDEA.

El mismo día, la parte querellante presentó una *Moción para Hacer Constar Falta de Resolución de Moción de Acomodaciones, Violación a la ADA y Afectación al Derecho a un Proceso Expedito.*[18] En esencia, la parte querellante alegó que la falta de resolución, previa a la moción solicitando acomodo, afectó su participación en el procedimiento. Arguyó que al no tener los acomodos razonables solicitados quedó sorprendido por la solicitud de prórroga del DE y quedó sin oportunidad para analizar o procesar dicha solicitud de forma efectiva. Expresó que esto violó sus derechos protegidos por la ADA e impactó no solo la equidad del procedimiento, sino que también violentó la expectativa fundamental de una resolución expedita conforme el estatuto de IDEA.  De la misma forma, hizo constar los siguientes derechos:

1. No consintió expresa ni tácitamente a la extensión del término reglamentario de treinta (30) días para celebración de vista.
2. No convalidó el anuncio sorpresivo de prórroga realizado por el Departamento de Educación.
3. Participa en el procedimiento bajo estricta protesta.
4. Se reserva expresamente su derecho a reclamar las violaciones procesales y sustantivas ocurridas, y a solicitar los remedios correspondientes en revisión judicial o instancia superior.

---

[17] Apéndice del recurso, págs. 43-44.
[18] Apéndice del recurso, págs. 45-47.

Así las cosas, el 9 de mayo de 2025, se presentó por el DE una *Moción para que se Declare Ha Lugar la Defensa*.[19] En esencia, el DE reafirmó su posición que la *Querella* ante la consideración del organismo administrativo era de la misma naturaleza que el recurso QEE 2425-22-08-00333 y solicitó la desestimación de la *Querella* por ser cosa juzgada.

El 14 de mayo de 2025, el Departamento presentó una *Notificación sobre Estipulación de Prueba Documental y Notificación de Prueba*.[20] En el aludido escrito, la parte querellada enlistó la prueba que pretendía utilizar en la vista del 19 de mayo de 2025 y entre estas se encontraba la prueba testifical. Sobre la prueba testifical, alegó que pretendía presentar a las siguientes personas:

> i. FDEE ORE Ponce- testificar[á] sobre la política pública del DEPR y aquellos asuntos pertinentes al caso y sobre los cuales tiene conocimiento.
>
> ii. Personal del Colegio StarBright Academy- tetificará sobre la ubicación del menor y temas relacionados.[21]

El mismo día que el escrito anterior, la parte querellante presentó una *Moción en Oposición a la Moción sobre Cosa Juzgada e Impedimento Colateral*.[22] En esencia, solicitó que declarara No Ha Lugar la solicitud del Departamento sobre la desestimación de la *Querella* por cosa juzgada y que continuara el procedimiento conforme las disposiciones reglamentarias.

Del mismo modo, el 14 de mayo de 2025, la parte querellante presentó una segunda moción titulada *Moción para Excluir Prueba por Notificación Extemporánea tras la Apertura Formal de la Vista*.[23] En síntesis, la parte querellante reafirmó varias de las posturas realizadas en sus petitorios anteriores. De la misma forma, enfatizó en que se excluyera toda prueba documental y testifical notificada por el DE el 14 de mayo de 2025 por haber sido presentada fuera del término reglamentario y luego de la apertura formal de la vista.

---

[19] Apéndice II del *Escrito en Cumplimiento de Resolución*, págs. 1-19.
[20] Apéndice del recurso, págs. 50-54.
[21] Apéndice del recurso, pág. 51.
[22] Apéndice del recurso, págs. 55-60.
[23] Apéndice del recurso, págs. 61-64.

El 19 de mayo de 2025, el Foro Administrativo de Educación Especial emitió una *Resolución* titulada *Notificación Sobre*: *Moción para Excluir Prueba por Notificación Extemporánea Tras la Apertura Formal de la Vista; Sobre Acomodos Razonables*.[24] En el referido dictamen, el organismo administrativo declaró No Ha Lugar la *Notificación sobre Estipulación de Prueba Documental y Notificación de Prueba* presentada por el DE, mientras que declaró Ha Lugar los acomodos razonables por la parte querellante.

Finalmente, y luego de la celebración de la vista administrativa el 19 de mayo de 2023, el Foro Administrativo de Educación Especial emitió una *Resolución Final* mediante la cual declaró No Ha Lugar la *Querella*.[25] El organismo administrativo emitió las siguientes determinaciones de hechos:

**A. Primer Testigo Parte Querellante**:

1. Declaró que en la reunión del Comité del Programa Educativo Individualizado celebrado el 22 de mayo, las partes alcanzaron un acuerdo condicionado respecto al cambio de ubicación del estudiante. El Comité del Programa Educativo Individualizado acordó implementar transicionalmente un modelo 2 a 1 por un periodo experimental de 10 semanas, durante el cual se realizarían evaluaciones periódicas del desempeño del menor.
2. Declaró que se suponía que se le [dieran] terapia desde el primer día, no a través del segundo mes, declaró que el Departamento de Educación, tuvo tres semanas sin darle detalles y se comenzaron a dar exactamente tres semanas después de lo acordado. Declaró que el punto es señalar que se establecieron después del tiempo que se acordó.
3. Declaró que su hijo requería un maestro dedicado exclusivamente a él. Todas las evidencias en el expediente educativo del menor, incluyendo las evaluaciones vigentes, confirman la necesidad de este apoyo individualizado para su hijo.
4. Declaró que no hay ningún informe profesional recomendado ni con datos objetivos que valide el modelo 2 a 1 como [*sic*] ubicación funcional para el menor. Por el contrario, toda determinación educativa previa apunta a un 1 a 1.
5. Declaró que, hasta el cierre del año escolar 2024, el estudiante continuó recibiendo servicios bajo este modelo individualizado sin que existiera implementación formal

---

[24] Apéndice del recurso, págs. 65-66.
[25] Apéndice del recurso, págs. 69-77.

autorizada ni evaluada del modelo 2 a 1. En resumen, el 1 a 1 es el único entorno educativo aprobado y respaldado por evidencia en este caso, según sus alegaciones.

6. Declaró que la evaluación de ABA no se realizó.

**Contrainterrogatorio**

1. Recuerda las personas presentes en el COMPU de 22 de mayo, y declara sus nombres.
2. Declaró que el COMPU se celebró para discutir en el año escolar [2024-2025]. Mostrándole la Minuta estipulada de 22 de mayo se le preguntó si era para discutir la propuesta de servicios, declaró que no recordaba. En el punto 7 de la Minuta contiene la controversia de la Querella.
3. Declaró que el COMPU se reunirá dentro de las 10 semanas, y que surge de la Minuta del 22 de mayo. (Exhibit 1 por estipulación de las partes)
4. Declaró que el Colegio no cumplió con las evaluaciones periódicas al pasar las 10 semanas.
5. Declaró que no se hablaba de cómo se iban a hacer las evaluaciones periódicas.
6. Declaró que del "experimento" no funcionar se volvería al modelo 1 a 1, y esto se resolvería en un COMPU debidamente constituido a las 10 semanas.

**Re-directo**

1. Declara que el acuerdo era para las primeras 10 semanas no para luego de las primeras 10 semanas. Que el "experimento" no debía ser un fracaso, si se hubiese evaluado dentro de las primeras 10 semanas.

**B. Testigo de la parte querellada**:

1. Declara que conoce al menor querellante porque está en su academia.
2. Participa en reuniones [del] COMPU como proveedora de servicios.
3. El 22 de mayo de 2024 se celebró [el] COMPU del querellante, en el cual recuerda haber participado.
4. Se hizo referencia al Exhibit 1 y declara que se llegaron a unos acuerdos.
5. En cuanto a la ubicación se acordó en el punto 7 E que el estudiante [iba a] estar ubicado con otro estudiante con un asistente de servicios y un maestro certificado en autismo, capacitado en ABA. Debe ser una persona cualificada. Que se realizarán evaluaciones periódicas del funcionamiento del estudiante y de no funcionar en esta ubicación estar abierto a discusión y volver al modelo 1 a 1. El COMPU se reunirá a las 10 semanas del semestre de agosto a diciembre de 2024.
6. Declaró que como institución [relazarían] pruebas de ejecución para saber si el estudiante ha progresado.

7. Declaró que en el caso del querellante se hicieron pruebas [de] ejecución de los objetivos que están establecidos en el PEI.

8. Declaró sobre la diferencia de las pruebas periódicas y las de ejecución. Las de ejecución son como exámenes. De igual forma en el análisis aplicado de la conducta hacen evaluaciones periódicas anuales con el propósito de saber el progreso del estudiante. El padre no autorizó las de ABA. Pero sí se hicieron las pruebas de ejecución.

9. En agosto, declaró que participó en un COMPU en las semanas correspondientes y el padre asistió[,] pero no firmó ni avaló el progreso del estudiante.

10. Declaró que ella no participó en Mediación.

**Contrainterrogatorio**

1. Declaró que para realizar las evaluaciones periódicas de ABA se les envió a los padres la notificación para consentir, pero reitera que el padre del querellante se negó.

2. Declara que en esas evaluaciones sí se dieron recomendaciones clínicas, aunque no necesariamente tiene que aceptarlas.

3. Declara que la institución que representa s[í] le notificó las evaluaciones a la parte querellante.

4. Declaró que se le solicitó a los padres la autorización para realizar las evaluaciones de ABA. El padre no firmó ni autorizó.

5. A las 10 semanas el padre se reunió con la maestra para discutir las evaluaciones de ejecución.

6. Declara que el apartado 7 F de la Minuta del 22 de mayo de 2024, se habla de los resultados de la consulta. Declaró que solo se pudo realizar un estudio de caso.

7. En las 10 semanas se [discutió] el progreso del estudiante.

8. Declara que se [discutieron] los beneficios del modelo 2 a 1 en la reunión con la maestra.

9. Declara que no está la firma del padre en la reunión de las 10 semanas.

El organismo administrativo resolvió que la parte querellante no cumplió con el peso de la prueba para demostrar que la ubicación del menor G.L.V., modelo 2 a 1, en el año 2024-25 no era el adecuado para este. Esto es así, pues concluyó que el padre del menor no cooperó con los procesos acordados en el COMPU del 22 de mayo de 2024. El Foro Administrativo de Educación Especial resolvió que la parte querellada logró demostrar que se le realizaron las pruebas de ejecución al menor G.L.V., según el PEI de este, para el año académico 2024-2025. Del mismo modo, razonó que las pruebas periódicas y las de ejecución estuvieron disponibles

para el estudiante. Respecto a las pruebas de ejecución, concluyó que se realizaron y fueron discutidas con la maestra del menor, más el padre de este no quiso firmarlas. Resolvió, de la misma forma, que las evaluaciones sobre la conducta del menor fueron obstruidas por la falta de autorización del progenitor del menor.

Inconforme, el 18 de junio de 2023 la parte recurrente acudió ante esta curia mediante el presente recurso de *Revisión Judicial* y nos señala la comisión de los siguientes errores:

> **PRIMER ERROR-** El foro erró al justificar el cambio de ubicación con evaluaciones inválidas, extemporáneas y no discutidas en COMPU.

> **SEGUNDO ERROR-** El foro permitió la alteración de la ubicación educativa del menor en violación del principio "stay put", aplicable bajo IDEA.

> **TERCER ERROR-** Denegación efectiva de acomodos razonables solicitados bajo ADA, menoscabando la estructura del proceso y el debido proceso legal.

> **CUARTO ERROR-** Erró el foro administrativo al imponer al padre querellante la carga para probar la [inadecuación] del modelo 2:1, desviándose del marco procesal acordado por el COMPU.

> **QUINTO ERROR-** Erró la jueza administrativa al admitir testigos no notificados conforme el reglamento, en violación de 34 C.F.R. [sec.] 300.512 (b) (1) y del Reglamento 9168.

> **SEXTO ERROR-** Erró el foro administrativo al permitir la contestación extemporánea del Departamento de Educación sin aplicar el Artículo 6.7 (a) del Reglamento 9168 ni resolver las mociones del apelante relacionadas.

> **SEPTIMO ERROR-** Erró el foro al permitir al Departamento de Educación reformular y volver a presentar su defensa afirmativa de cosa juzgada, pese haberla incluido extemporáneamente, violando la norma de preclusión del Artículo 6.7(b) del Reglamento 9168.

Por su lado, el 18 de julio de 2025 la parte recurrida presentó su *Escrito en Cumplimiento de Resolución*.

Contando con la comparecencia de ambas partes, procedemos a resolver.

## II

## A

La *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA 9601, *et seq.* (LPAU) establece los estándares de revisión judicial de órdenes, resoluciones y providencias dictadas por las agencias administrativas. En lo pertinente al caso que nos ocupa, la Sección 4.2 de la LPAU, 3 LPRA sec. 9672, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sec. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo. […]

Las facultades adjudicativas de una agencia administrativa están regidas por la *Ley de Procedimiento Administrativo Uniforme*, *supra*, y por la jurisprudencia interpretativa. En especial, la Sección 3.1 de la LPAU, 3 LPRA sec. 9641, requiere que los organismos administrativos fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. En términos sustantivos y procesales, se ha resuelto que los procedimientos y las decisiones de las agencias administrativas están cobijados por una presunción de regularidad y corrección. *Graciani Rodríguez v. Garage Isla Verde, LLC.*, 202 DPR 117, 128-129 (2019). Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc.*, 161 DPR 69, 77-78 (2004).

Las decisiones administrativas deben ser respetadas a menos que la parte recurrente establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó

razonablemente. *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009). El alcance de la revisión judicial de las decisiones administrativas conforme la Sección 4.5 de LPAU, 3 LPRA sec. 9675, se limitan a determinar si el remedio brindado por la agencia es el apropiado; si las determinaciones de hechos realizadas se basan en evidencia sustancial que obra en el expediente administrativo y si las conclusiones de derecho son correctas mediante una revisión completa. Véase, además, *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 281 (2000).

Respecto a las determinaciones de hechos, la Sección 4.5 de la LPAU, *supra,* dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". El concepto de evidencia sustancial consiste en "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012).

Por otro lado, la Sección 4.5 de la LPAU, *supra*, dispone que las conclusiones de derecho "…serán revisables en todos sus aspectos por el tribunal". Sobre el mismo, el Tribunal Supremo de Puerto Rico, en el caso *Vázquez v. Consejo de Titulares*, 2025 TSPR 56 (2025) adoptó lo resuelto por el Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Conforme a lo establecido por el Tribunal Supremo en el caso precitado, los tribunales deben ejercer un juicio independiente al de un organismo administrativo, al decidir si ésta ha actuado dentro del marco de sus facultades estatutarias. *Id.* Del mismo modo, contrario a la práctica de las pasadas décadas, los tribunales no vienen obligados a darle deferencia a la interpretación de derecho que haga una agencia administrativa cuando la ley es ambigua. *Id.*

**B**

El Tribunal Supremo de Puerto Rico ha reconocido que la educación goza de profundas garantías constitucionales, esto es así, pues en la Carta de Derechos de la Constitución de Puerto Rico se establece que todo ser

humano tendrá derecho a una educación que se incline al pleno desarrollo de su personalidad y al fortalecimiento del respeto a otros seres humanos y a sus libertades fundamentales. *Orraca López v. ELA*, 192 DPR 31, 40-41 (2014); Artículo II, Sec. 5, Const. PR, LPRA, Tomo 1.  Del mismo modo, la Constitución de Puerto establece lo siguiente:

> […]Habrá un sistema de instrucción pública el cual será libre y enteramente no sectario. La enseñanza será gratuita en la escuela primaria y secundaria y, hasta donde las facilidades del Estado lo permitan, se hará obligatorio para la escuela primaria. No se utilizará propiedad ni fondos públicos para el sostenimiento de escuelas o instituciones educativas que no sean las del Estado. Nada de lo contenido en esta disposición impedirá que el Estado pueda prestar a cualquier niño servicios no educativos establecidos por la ley para protección o bienestar de la niñez. La asistencia obligatoria a las escuelas públicas primarias, hasta donde las facilidades del Estado lo permitan, según se dispone en la presente, no se interpretará como aplicable a aquéllos que reciban instrucción primaria en escuelas establecidas bajo auspicios no gubernamentales. Artículo II, Sec. 5, Const. PR, LPRA, Tomo 1.

A raíz de este mandato constitucional, el Estado ha promulgado varias legislaciones que atienden los retos educativos que enfrentan los menores con diversidad funcional, entre estos se encuentra la Ley Núm. 51-1996 (Ley Núm. 51), mejor conocida como *Ley de Servicios Educativos Integrales para Personas con Impedimentos*, 18 LPRA sec. 1351.  Véase, además, *Orraca López v. ELA*, *supra*, en la pág. 41.  Entre las declaraciones de política pública encontradas en el Artículo 3 de la Ley Núm. 51-1996, 18 LPRA sec. 1352, la legislatura promulgó lo siguiente:

> (1) Una educación pública, gratuita y apropiada, en el ambiente menos restrictivo posible, especialmente diseñada de acuerdo a las necesidades individuales de las personas con impedimentos y con todos los servicios relacionados indispensables para su desarrollo, y el cual, en la medida que sea posible, brindará a la persona acceso a actividades vocacionales y ocupacionales, incluyendo actividades agrícolas educativas que tengan el propósito de servir como laboratorios de enseñanza para la práctica laboral y el desarrollo de destrezas empresariales, entre otros, según se establezca en su plan individualizado de servicios, y lo más cerca posible de las demás personas sin impedimentos. Esto aplica tanto a las escuelas públicas del Departamento de Educación, como a las Escuelas de la Comunidad, en virtud de las disposiciones de la Ley 85-2018, según enmendada.
>
> […]

(3) **El diseño de un Programa Educativo Individualizado (PEI) que establezca las metas a largo y corto plazo, los servicios educativos y los servicios relacionados indispensables según lo determine el equipo multidisciplinario.**

[…] (Énfasis nuestro.)

Cabe destacar, que la aprobación Ley Núm. 51, *supra*, también respondió a la obligación de que Puerto Rico satisficiera los requisitos del *Individuals with Disabilities Education Act* (IDEA), 20 U.S.C.A. sec. 1400. *Orraca López v. ELA*, *supra*. El Tribunal Supremo ha expresado que el precitado estatuto federal fue adoptado por el Congreso de los Estados Unidos, con el propósito de asegurar que todos los menores con diversidad funcional recibieran una educación pública, gratuita y apropiada "…en atención a las necesidades particulares de cada estudiante, y proteger los derechos de éstos y de sus respectivos padres o tutores". *Id.* en la pág. 42. Por tal razón, IDEA en su sección 1415 (a) decreta lo siguiente:

> Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies.

Como parte de los derechos reconocidos a los menores con diversidad funcional, el Artículo 4 de Ley Núm. 51, 18 LPRA sec. 1353, establece, entre otras cosas, que toda persona con impedimentos tiene derecho a lo siguiente:

> (a) Que se le garantice, de manera efectiva, iguales derechos que a las personas sin impedimentos.
>
> (b) Ser representados ante las agencias y foros pertinentes por sus padres para defender sus derechos e intereses.
>
> […]
>
> (d) Recibir, en la ubicación menos restrictiva, una educación pública, gratuita, especial y apropiada, de acuerdo a sus necesidades individuales e idiomáticas.
>
> (e) Ser evaluados y diagnosticados con prontitud por un equipo multidisciplinario, que tome en consideración sus áreas de funcionamiento y necesidades, de modo que pueda recibir los servicios educativos y relacionados indispensables para su educación de acuerdo al programa educativo

individualizado para el desarrollo óptimo de sus potencialidades.

(f) Recibir los servicios integrales que respondan a sus necesidades particulares e idiomáticas y que se evalúe con frecuencia la calidad y efectividad de los mismos.

(g) Participar cuando sea apropiado en el diseño del Programa Educativo Individualizado PEI y en la toma de decisiones en los procesos de transición.

[…]

(j) Que sus padres o ellos mismos soliciten la remoción del expediente de documentos que puedan serles detrimentales, con arreglo a la reglamentación establecida.

(k) Que las decisiones que se tomen se fundamenten en el mejor interés de su persona.

Respecto a la figura de los padres, el Artículo 4 de Ley Núm. 51, *supra*, otorga a los progenitores de un menor con diversidad funcional el derecho a lo siguiente:

(a) Solicitar y recibir orientación por parte de cada agencia pertinente sobre las disposiciones de las leyes estatales y federales relacionadas con la condición de la persona con impedimentos y los procesos de identificación, evaluación, diseño del programa o plan individualizado de servicios, ubicación y debido proceso de ley.

(b) Solicitar, a nombre de la persona con impedimentos, los servicios disponibles en las diversas agencias gubernamentales para las cuales ésta sea elegible.

(c) Tener acceso a los expedientes, las evaluaciones y otros documentos relacionados con sus hijos con impedimentos, de acuerdo a las normas establecidas. Disponiéndose, que dichos documentos serán digitalizados y podrán ser accedidos a través de medios electrónicos con las salvaguardas necesarias para asegurar la confidencialidad contemplada en esta Ley.

[…]

Del mismo modo, el Artículo 4 de Ley Núm. 51, *supra*, impone a los padres de un menor con impedimentos las siguientes responsabilidades:

(a) Atender y cuidar de sus hijos con impedimentos y satisfacer sus necesidades básicas de alimentación, albergue, cuidado e higiene personal en el ambiente más sano posible.

(b) Orientarse sobre las leyes relacionadas con los menores con impedimentos, los servicios disponibles y las técnicas de manejo de los mismos.

(c) Orientarse en relación a los servicios que las agencias concernidas puedan brindar a sus hijos.

(d) Participar en el proceso de desarrollo del programa de servicios educativos para las personas con impedimentos.

(e) Gestionar y colaborar para que las personas con impedimentos reciban los servicios educativos y el tratamiento prescrito.

(f) Cuidar y conservar en buen estado los equipos que les provean las agencias y cumplir con las disposiciones de la reglamentación correspondiente.

**C**

El Artículo 2 en su inciso 14 de la Ley Núm. 51,18 LPRA sec. 1351, define el PEI como aquel documento preparado por escrito para cada persona con impedimentos. Este documento está diseñado para responder a las necesidades educativas particulares de la persona con diversidad funcional, basado en aquellas evaluaciones realizadas por un equipo multidisciplinario, y con la participación de los padres de la referida persona y, cuando sea apropiado, por la propia persona. *Id.* Este programa podrá ser revisado anualmente e incluso puede ser enmendado, tantas veces sea necesario, tomando en consideración la importancia de que éste responda a las necesidades educativas particulares adaptándose a la persona con diversidad funcional. *Id.*

Por su parte, la Sección 7.1 del Manual de Procedimientos de Educación Especial, Departamento de Educación de Puerto Rico, 2020, pág. 65, establece que el PEI es:

1. […] el documento donde se establecen las necesidades académicas y funcionales del estudiante y cómo serán minimizadas a través de los servicios que el programa de educación especial ofrece con el propósito de garantizar que el estudiante reciba una educación pública, gratuita y apropiada conocida como FAPE, por sus siglas en inglés.
2. Es un documento que recoge los acuerdos de los servicios educativos, relacionados y suplementarios que el DEPR se compromete a ofrecerle al estudiante.
3. El PEI es un documento oficial que contiene servicios cobijados por legislación federal y estatal. Se revisa al menos una vez al año y se enmienda todas las veces que sea necesario.

**D**

Cuando los padres o tutores del menor con diversidad funcional entienden que los servicios educativos que se le están brindando al estudiante no son apropiados o no van acorde con las necesidades especiales del menor, el estatuto federal IDEA y la Ley Núm. 51, *supra*, facultan a los progenitores o encargados de este a presentar una querella en la cual pueden solicitar una vista administrativa ante un oficial examinador imparcial. *Orraca López v. ELA*, *supra*. en la pág. 42. En primer lugar, la ley federal *IDEA* en su sección 1415 en su inciso (6) (A) (B) establece lo siguiente:

> (6) An opportunity for any party to present a complaint—
> (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and
> (B) which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this subchapter, in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph.

Del mismo modo, el Artículo 4, en el inciso (B) (2) de la Ley Núm. 51, *supra*, establece lo siguiente:

> 2. Los padres del menor tendrán derecho a:
>
> […]
>
> d) **Radicar querella para solicitar reunión de mediación o vista administrativa, en caso de que la persona con impedimentos no esté recibiendo una educación apropiada, en el ambiente menos restrictivo y de acuerdo a los arreglos de servicios contenidos en el PISF, PEI o PIER, según sea el caso**.
>
> (e) **Que las decisiones relacionadas con la identificación, evaluación, ubicación e intervención que afecten a la persona con impedimentos, se tomen en todo momento con su aprobación y consentimiento, a menos que respondan a la decisión de un tribunal**.
>
> (f) **Que cualquier objeción de parte de éstos sea considerada diligentemente al nivel correspondiente, incluyendo aquellos casos cuyas circunstancias particulares ameriten determinaciones a nivel estatal, o en el foro pertinente**. (Énfasis nuestro.)

Por su parte, el Manual de Procedimientos de Educación Especial (Manual) *supra*, en la pág. 240, en su sección 19.1 inciso (4) dispone que la querella administrativa es el mecanismo mediante el cual se solucionan las controversias por medio de tres opciones. Estas opciones son la mediación, la conciliación y la vista administrativa. *Id* en la sección 19.3, pág. 243. Respecto a estas, la sección 19.3 del Manual, *supra*, las define de la manera siguiente:

> a. La mediación, es una alternativa voluntaria que pueden seleccionar las partes. Está dirigida por un mediador certificado que no pertenece al DEPR. Este profesional coordinará la reunión entre las partes con premura y tiene un término de 30 días calendario, a partir de radicada la querella, para propiciar acuerdos. Es opcional para las partes.
>
> b. La conciliación, es una alternativa obligatoria del proceso de querella, a menos que seleccionen la medición como medio para solucionar el conflicto o que ambas partes rechacen la reunión. Está dirigida por funcionarios del DEPR. Este profesional coordinará la reunión entre las partes dentro de un término de 15 días calendario, a partir de radicada la querella, aunque el término se puede extender por acuerdo entre ambas partes. El conciliador tiene un término de 30 días calendario para propiciar acuerdos entre las partes.
>
> c. **La vista administrativa, la cual es dirigida por un juez administrativo. En esta opción las partes presentan su argumento y sus evidencias que lo sustentan ante el juez y este es quien decide cómo resolver la controversia. Las querellas pasan a vista administrativa cuando las partes no lograron llegar a acuerdos en la mediación o conciliación o pasados los 30 días y las partes no llegan a acuerdos**. (Énfasis nuestro.)

**E**

El *Reglamento del Procedimiento para la Resolución de Querellas Administrativas de Educación Especial y sobre la Otorgación de Honorarios de Abogados*, Reglamento Núm. 9168 de 26 de febrero de 2020 (Reglamento Núm. 9168), fue promulgado con el propósito de establecer los procedimientos que se implementarán en la adjudicación de querellas administrativas de Educación Especial. Artículo 1 del Reglamento Núm. 9168, *supra*. En específico, este reglamento atiende las controversias relacionadas a la localización, identificación, ubicación, registro, servicios educativos, entre otros, de personas con impedimentos a la luz de los estatutos y jurisprudencia federal y estatal. *Id.*

En el Artículo 6, inciso (7) del Reglamento Núm. 9168, *supra*, se establece el procedimiento para la contestación de la querella administrativa. Sobre el mismo, dispone que la División Legal de la Secretaría Asociada de Educación Especial del Departamento de Educación tendrá el término de diez (10) días desde la presentación de la querella para presentar la contestación a esta. *Id.* en su sub-inciso (a). Este término reglamentario para presentar la contestación de la querella es de estricto cumplimiento. *Id.* Sobre el contenido de la contestación a la querella, el Artículo 6 en su inciso (7) (b) del Reglamento Núm. 9168, *supra*, establece que debe contener la alegación responsiva, en específico, como sigue:

i. las razones por las cuales el Departamento de Educación denegó el remedio solicitado en la querella.

ii. las otras opciones que consideró el COMPU con relación a los remedios solicitados.

iii. una descripción de los documentos que utilizó el Departamento de Educación para tomar su decisión.

iv. una descripción de otros factores relevantes que fueron considerados por la agencia educativa.

En el Artículo 6, inciso (7) (c) del Reglamento Núm. 9168, *supra*, se regula lo relacionado a la actuación del Foro Administrativo de Educación Especial cuando la División Legal del Departamento incumple con la presentación de la contestación de la querella en el término reglamentario, sobre el mismo dispone lo siguiente:

En caso de que la Agencia no haya contestado la querella dentro del término reglamentario, el juez emitirá una orden para contestar la misma inmediatamente y previo al inicio de la vista administrativa. El juez administrativo podrá considerar cualquier perjuicio que la falta de contestación a la querella haya causado a la parte querellante y determinar medidas para compensar el mismo.

Sobre la vista administrativa, el Artículo 9 del Reglamento Núm. 9168, *supra*, establece que una vez la querella es referida a la Unidad Secretarial, esta se referirá inmediatamente a un juez o jueza administrativa que tendrá un término de cuarenta y cinco (45) días calendarios para solucionar la controversia. En el Artículo 9 inciso (3) (a) del Reglamento

Núm. 9168, *supra*, se establece lo siguiente sobre los términos de la vista administrativa:

ii. De existir mociones pendientes por resolver, el juez administrativo deberá resolver en un término no mayor de cinco (5) días calendarios a partir del recibo de estas.

iii. La fecha pautada para la celebración de la vista administrativa no podrá ser mayor de treinta (30) días calendario tomando como punto de partida la fecha de cierre de la reunión de mediación o conciliación, o la fecha límite autorizada por las partes para extender el periodo de la conciliación (que no puede ser mayor de treinta (30) días después de presentada la querella), o la fecha en que las partes renuncien por escrito a la reunión de mediación o conciliación, o el periodo establecido para anular los acuerdos en el proceso de conciliación o de mediación (tres (3) días después de firmado el acuerdo), según aplique, que debe coincidir con el día del referido de la querella al juez administrativo.

iv. El juez administrativo deberá emitir una resolución no más tarde de 45 días calendario, a partir del recibo de la Querella, menos que alguna de las partes haya solicitado su extensión para emitir resolución dentro de ese término. Es decir, que se realice una extensión apropiada de los términos para emitir la resolución.

Como parte del contenido de la orden emitida por el Foro Administrativo de Educación Especial para la celebración de la vista administrativa, el Artículo 9 en su inciso (3) (b) del Reglamento Núm. 9168, *supra*, establece que la orden deberá contener:

[…]

2) **Advertir que cinco (5) días laborables previo a la celebración de la vista administrativa las partes deberán notificar la prueba a presentar. Ninguna prueba documental o pericial debe ser recibida por el juez previo a la celebración de la vista, a menos que sea prueba estipulada por las partes y así sea notificado mediante moción.**

3) Advertir que las partes tendrán derecho:

[…]

b) A presentar prueba documental, testifical y pericial.

c) A confrontar y contra interrogar los testigos, a requerir la comparecencia de testigos.

d) **Prohibir la presentación de la prueba que la otra parte no haya notificado cinco (5) días laborales previo a la celebración de la vista administrativa.**

[…]

i) Que no suspenderá la vista administrativa, excepto que dicha solicitud se haga por escrito al menos cinco (5) días previo a su celebración y justifique dicha suspensión.

[…] (Énfasis nuestro.)

Por otro lado, el Artículo 9 inciso (7) (xi) del Reglamento Núm. 9168, *supra*, establece que el peso de la prueba en las vistas administrativas celebradas en el Foro Administrativo de Educación Especial corresponderá a la parte querellante. Por su parte, el *quantum* de prueba requerido para probar sus alegaciones es el de preponderancia de prueba. *Id.*

**III**

En el caso ante nuestra consideración, la parte apelante en primer lugar nos plantea que el Foro Administrativo de Educación Especial incidió al justificar el cambio de ubicación del recurrente con evaluaciones inválidas, extemporáneas y no discutidas en el COMPU. En segundo lugar, la parte recurrente nos señala que el organismo administrativo erró al permitir la alteración de la ubicación educativa de este, en violación del principio "stay put", aplicable bajo el estatuto federal IDEA. Como tercer planteamiento de error, la parte recurrente nos indica que la agencia administrativa incidió al denegar los acomodos razonables solicitados para el recurrente bajo el estatuto federal ADA, menoscabando la estructura del proceso y el debido proceso legal. Del mismo modo, en el cuarto señalamiento de error nos alega que el Foro Administrativo de Educación Especial erró al imponer al padre del recurrente la carga para probar la inadecuación del modelo 2:1, desviándose del marco procesal acordado por el COMPU. No le asiste razón. Veamos.

Es norma reiterada que, mediante la revisión judicial, el Tribunal de Apelaciones debe determinar lo siguiente: si el remedio brindado por la agencia administrativa es el apropiado; si las determinaciones de hechos realizadas se basan en evidencia sustancial que obra en el expediente administrativo; y, si las conclusiones de derecho son correctas mediante una revisión completa y absoluta. Siempre tomando en consideración, que

el criterio rector para los tribunales para revisar una decisión administrativa será la razonabilidad en la actuación de la agencia.

Por otro lado, cuando los progenitores o tutores de un menor con diversidad funcional entiendan que los servicios educativos que se le están brindando al estudiante no son apropiados o no van acorde con las necesidades especiales del menor, el estatuto federal IDEA y la Ley Núm. 51, *supra*, facultan a los padres o encargados de este a presentar una querella en la cual pueden solicitar una vista administrativa ante un oficial examinador imparcial. En la vista ante el Foro Administrativo de Educación Especial, conforme el Artículo 9 en el inciso (7) (xi) del Reglamento Núm. 9168, *supra*, el peso de la prueba en estas vistas corresponderá a la parte querellante, quien deberá probar sus alegaciones mediante preponderancia de prueba.

En el caso ante nuestra consideración, la parte recurrente presentó una *Querella* contra la parte recurrida en la cual alegó que el 22 de mayo de 2024 se celebró una reunión del COMPU con el propósito de discutir los objetivos del PEI del recurrente para el año escolar 2024-2025. En la referida reclamación arguyó que, como parte de los acuerdos llegados, las partes pactaron lo siguiente:

1. Se decidió cambiar la ubicación del recurrente de un modelo 1:1 (un maestro, un estudiante) a un modelo 2:1 (dos estudiantes, un maestro) por un periodo experimental de diez (10) semanas, en el cual se le estaría realizando evaluaciones periódicas sobre su funcionamiento y de no observarse progreso en esta ubicación, se discutiría el regreso del recurrente al modelo original 1:1.

2. Acordaron que el recurrente recibiría terapias sobre el ABA, cinco (5) días a la semana por ciento veinte (120) minutos diarios.

3. Pactaron que se mantendrían en comunicación junto a la Lcda. Natalia Rigual para realizar un estudio de caso donde ambas partes, la Dra. Iris Pons y la Lcda. Natalia Rigual, presentarían sus recomendaciones desde sus respectivas especialidades, para el óptimo funcionamiento del recurrente.

Según las alegaciones del recurrente, la parte recurrida incumplió con estos acuerdos por lo que se vio en la obligación de presentar varios recursos ante el Foro Administrativo de Educación Especial. Por tal razón, solicitó al organismo administrativo, entre otras cosas, que restituyera de

manera inmediata al recurrente a su ubicación original 1:1 y la reposición del año escolar 2024-2025 bajo el acomodo educativo 1:1.

Por su parte, la parte recurrida presentó su *Contestación a Querella*, en la cual alegó que el recurrente contaba con las alternativas de ubicación para atender sus necesidades educativas, servicios relacionados y suplementarios, por lo que le correspondía al progenitor del recurrente demostrar, mediante prueba lo contrario. Del mismo modo, la parte recurrida planteó de manera afirmativa que las recomendaciones realizadas por un especialista o por un padre no son vinculantes, pues es el COMPU quien determinaba los servicios educativos, relacionados y suplementarios que recibirán los estudiantes, por lo que no estaban en la obligación a ofrecer un modelo educativo que no fuese avalado por el COMPU.

Tras un estudio sosegado del expediente administrativo, resolvemos que no le asiste razón a la parte recurrente en sus planteamientos de error. En atención al primer y segundo error, es importante subrayar que la parte recurrente no logró demostrar mediante preponderancia de prueba las alegadas violaciones de la parte recurrida a las disposiciones de los estatutos federales IDEA y ADA como de la Ley Núm. 51, *supra*. La parte recurrente no logró evidenciar que la ubicación del menor en el modelo educativo 2:1 era inadecuada, ni mucho menos, que la referida ubicación hubiese violentado el acuerdo del COMPU celebrado el 22 de mayo de 2024. Del mismo modo, colegimos con el Foro Administrativo de Educación Especial, en que las pruebas periódicas y las de ejecución estuvieron disponibles para el recurrente, incluso, se realizaron las referidas pruebas de ejecución para saber si el estudiante había progresado.[26] No obstante, el padre del recurrente no cooperó con los procesos pactados en el COMPU celebrado el 22 de mayo de 2024.[27] De la misma forma, quedó evidenciado que las evaluaciones periódicas de ABA estuvieron

---

[26] Véase, Apéndice del recurso, págs. 73-74.
[27] *Id.*

disponibles para ser realizadas al recurrente, pero el padre de este no las autorizó.[28]

Por otra parte, el recurrente plantea en su tercer error que el foro recurrido erró al denegar los acomodos razonables solicitados al amparo de la ley ADA. Según surge del expediente y tal y como reseñamos en el tracto procesal, el recurrente solicitó los acomodos razonables y estos fueron provistos, pues el Foro Administrativo los declaró Ha Lugar en su decisión emitida el 19 de mayo de 2025.[29] Por tal motivo, tampoco le asiste la razón en cuanto a esto. En cuanto a su cuarto señalamiento, el recurrente alega que el Foro Administrativo erró al imponerle la carga de demostrar la inadecuación del modelo 2:1. Reiteramos que dicha carga es impuesta reglamentariamente por el Artículo 9 en el inciso (7) (xi) del Reglamento Núm. 9168, según expresamos anteriormente. Cónsono con esto, es forzoso concluir que el Foro Administrativo no erró de forma alguna en cuanto a esto, sino que actuó conforme a derecho.

Por otro lado, en su quinto señalamiento de error, la parte recurrente nos plantea que el Foro Administrativo de Educación Especial incidió al admitir testigos no notificados conforme el reglamento. Nuevamente, no le asiste razón. Discutimos a continuación.

Como parte de la orden a ser emitida por el Foro Administrativo de Educación Especial sobre la vista administrativa a celebrarse, el Artículo 9 en su inciso (3) (b) del Reglamento Núm. 9168, *supra*, establece que el o la juzgadora de los hechos debe advertir, que cinco días laborales previo a la celebración de la vista administrativa, las partes deberán notificar la prueba a presentar. En el caso ante nuestra consideración, el 25 de abril de 2025 se celebró una vista en la cual compareció la parte recurrente y la recurrida.[30] En la referida vista, la parte recurrida expresó que no había notificado prueba para la vista porque realizaría un planteamiento de derecho, por lo que el Foro Administrativo de Educación Especial requirió

---

[28] *Id.*
[29] Véase, Apéndice del recurso, pág. 65.
[30] Véase, Apéndice del recurso, págs. 48-49.

a la recurrida que expusiera su solicitud por escrito y se reseñaló el caso, por acuerdo entre las partes, al 19 de mayo de 2025 a las 9:00 am. El 14 de mayo de 2025, la parte recurrida presentó una *Notificación sobre Estipulación de Prueba Documental y Notificación de Prueba*.[31]   En el aludido escrito, informó la prueba que pretendía utilizar en la vista del 19 de mayo de 2025; entre estas se encontraba la prueba testifical del Personal del Colegio StarBright Academy. Expresó que este personal testificaría sobre la ubicación del menor y temas relacionados. Así las cosas, el 19 de mayo de 2025 se celebró la vista administrativa en la cual la directora del Colegio StarBright Academy compareció como testigo de la parte recurrida.[32]

A raíz del derecho y el cuadro fáctico antes expuesto, colegimos que no le asiste razón a la parte recurrente en su quinto señalamiento de error cuando señala que el Foro Administrativo de Educación Especial admitió testigos no notificados conforme el reglamento. Esto es así, pues el 14 de mayo de 2025, cinco días antes de la celebración de la vista, la parte recurrida anunció que presentaría personal del Colegio StarBright Academy y sobre temas que testificarían en la vista del 19 de mayo de 2025, conforme al Artículo 9, inciso (3) (b) del del Reglamento Núm. 9168, *supra*.  Por tal razón, no se cometió el quinto señalamiento de error.

En su sexto señalamiento de error, la parte recurrente nos indica que el organismo administrativo erró al permitir la contestación fuera de término de la parte recurrida sobre la querella y al no contestar las mociones presentadas. Finalmente, en el séptimo señalamiento de error, la parte recurrente nos plantea que el Foro Administrativo de Educación Especial incidió al permitir a la parte recurrida a volver a presentar su defensa afirmativa de cosa juzgada, pese haberla incluido extemporáneamente. No le asiste razón. Ilustramos.

---

[31] Véase, Apéndice del recurso, págs. 50-54.
[32] Véase, Apéndice del recurso, págs. 69-77.

El Artículo 6 inciso (7) del Reglamento Núm. 9168, *supra*, establece el procedimiento a seguir para la contestación de la querella ante el Foro Administrativo de Educación Especial. Conforme el Artículo 6, inciso (7) (a) del Reglamento Núm. 9168, *supra*, la División Legal de la Secretaría Asociada de Educación Especial del Departamento de Educación tendrá el término de diez (10) días desde la presentación de la querella para presentar la contestación a esta. Cuando la División Legal del Departamento incumple con la presentación de la contestación de la querella en el término reglamentario, el Artículo 6 inciso (7) (c) Reglamento Núm. 9168, *supra*, faculta al juez o jueza administrativa a emitir una orden para contestar la misma inmediatamente y previo al inicio de la vista administrativa.

Por otro lado, el Artículo 9 inciso (3) (a) del Reglamento Núm. 9168, supra, establece que el Foro Administrativo de Educación Especial, de tener mociones pendientes antes de la vista administrativa, deberá resolverlas en un término no mayor de cinco (5) días calendario a partir del recibo de estas.

En el caso ante nuestra consideración, la parte recurrente presentó varias querellas ante el Foro Administrativo de Educación Especial, no obstante, la que se encuentra ante nuestra consideración es la presentada el 24 de marzo de 2025.[33] El 7 de abril de 2025, la parte recurrida presentó su *Contestación a Querella*, en la cual realizó sus alegaciones responsivas y defensas afirmativas.[34] Del mismo modo, solicitó al organismo administrativo el cierre y archivo de la presente *Querella* y que se procediera a abrir la QEE 2425-22-08-00333 conforme a lo resuelto por el Tribunal de Apelaciones en el recurso KLRA202400710. El 8 de abril de 2025, la parte recurrente presentó una *Moción Solicitando Rebeldía Parcial del Departamento de Educación y Limitación de Defensas No Planteadas*, en la cual solicitó que se declarara en rebeldía parcial a la parte recurrida

---

[33] Véase, Apéndice del recurso, págs. 1-4.
[34] Véase, Apéndice del recurso, págs. 7-15.

porque la *Contestación a Querella* se realizó fuera de término sin explicaciones.[35] El 13 de abril de 2025, el Foro Administrativo de Educación Especial presentó una *Notificación sobre Moción Solicitando Rebeldía del Departamento de Educación y Limitación de Defensas no Planteadas* en la que tomó conocimiento del contenido de la comparecencia del DE y señaló vista para el 25 de abril de 2025.[36] La parte recurrida presentó, el 21 de abril de 2025, al DE una *Moción en Cumplimiento de Orden*, en esta aceptó que presentó su *Contestación a Querella* fuera del término reglamentario de diez (10) días por un error involuntario en el proceso de su presentación y que no hubo necesidad de que el Juez emitiera una orden para contestar la querella, pues tan pronto se percató de la misma, la contestación fue presentada.[37]

En la vista celebrada el 25 de abril de 2025, la parte recurrida expresó que no se había notificado prueba para la vista porque realizaría un planteamiento sobre la *Querella* ante la consideración del organismo administrativo, pues entendía que esta era de la misma naturaleza que el recurso QEE 2425-22-08-00333.[38] El Foro Administrativo de Educación Especial requirió a la parte recurrida que expusiera su solicitud por escrito, porque la parte recurrente solicitó replicar de manera escrita. Así las cosas, el 9 de mayo de 2025 la parte recurrida presentó una *Moción para que se Declare Ha Lugar la Defensa* y en esta planteó su defensa de cosa juzgada.[39]

Por otro lado, la parte recurrida también presentó varios escritos ante el Foro Administrativo de Educación Especial. Entre estos, el 11 de abril de 2025 el padre del recurrente presentó un escrito donde solicitó ciertos acomodos para la vista a celebrarse pues padecía de TDAH, que afectaba su capacidad para desenvolverse en un sistema de adversario y lo colocaban en desventaja frente a la parte recurrida que contaba con

---

[35] Véase, Apéndice del recurso, págs. 19-20.
[36] Véase, Apéndice del recurso, pág. 30.
[37] Véase, Apéndice del recurso, págs. 37-40.
[38] Véase, Apéndice del recurso, págs. 48-49.
[39] Véase, Apéndice II del *Escrito en Cumplimiento de Resolución*, págs. 1-19.

representación legal y personal capacitado.[40] Subrayamos que el 19 de mayo de 2025 el Foro Administrativo de Educación Especial emitió una *Resolución* en la que declaró No Ha Lugar la *Notificación sobre Estipulación de Prueba Documental y Notificación de Prueba* presentada por la parte recurrida, mientras que declaró Ha Lugar los acomodos razonables solicitados por la parte recurrente.[41]

Luego de un estudio del derecho antes expuesto y analizando el cuadro fáctico del caso, resolvemos que no se cometieron el sexto y séptimo planteamiento de error. Queda meridianamente claro que el Foro Administrativo de Educación Especial atendió los planteamientos realizados por la parte recurrente, incluyendo su solicitud de acomodos y resolvió la *Querella*. A pesar de que la parte recurrida presentó su *Contestación a Querella* fuera de término, esta lo presentó antes de que el Foro Administrativo de Educación Especial emitiera una orden y hubiese causado un daño a la parte recurrente.  Del mismo modo, no procede el planteamiento de la parte recurrente de que el Foro Administrativo de Educación Especial incidió al permitir a la parte recurrida volver a presentar su defensa afirmativa de cosa juzgada, pues al final esta no fue atendida por el organismo administrativo.

**IV**

Por los fundamentos antes expuestos, confirmamos al Foro Administrativo de Educación Especial.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Aldebol Mora concurre sin escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[40] Véase, Apéndice del recurso, págs. 23-25.
[41] Véase, Apéndice del recurso, págs. 65-66.